PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM EVANS, ) | |
| ) | CASE NO. 5:12CV01459 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| LABORERS' DISTRICT COUNCIL AND ) | |
| CONTRACTORS' PENSION FUND OF ) | |
| OHIO, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendant. ) | **ORDER** [Resolving ECF No. 29] |

Plaintiff William Evans commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*, against Defendant Laborers' District Council and Contractors' Pension Fund of Ohio. Plaintiff challenges the administrator's decision to deny his application for pension benefits. The Court has reviewed Plaintiff's merits brief, Defendant's opposition, Plaintiff's reply, the administrative record, and the governing law. For the reasons provided, the Court finds that the denial of pension benefits to Plaintiff violated the Pension Plan, and Plaintiff is entitled to recover the benefits accorded him under the terms of the Plan.

### I. Factual and Procedural History

Defendant (or "the Pension Fund") is a multi-employer pension fund that was established on November 1, 1967. A.R. 98, 106. The Pension Fund is administered by a Board of Trustees comprised of employer and union representatives. A.R. 107. The Board of Trustees is empowered with discretionary authority to decide who is eligible for pension benefits in accordance with the

(5:12CV01459)

provisions of the Pension Plan.  A.R. 89.  The Pension Plan, in turn, is the document that sets forth the rules and regulations governing the Pension Fund.  A.R. 89.

To acquire regular retirement benefits from the Pension Fund, a participating employee must, among other things: (1) become eligible by working at least 250 hours in a calendar year in "covered employment," which means a period of employment during which an employer is required by a collective bargaining agreement or other written agreement to contribute to the Pension Fund on the employee's behalf; (2) earn pension credits; and (3) earn vesting credits.  A.R. 61, 63, 131.  The accumulation of pension credits determines the size of an employee's pension benefits.[1]  A.R. 64. The acquisition of a certain number of vesting credits confers a nonforfeitable, vested right to those pension benefits.  A.R. 65.  Although employees who worked in covered employment after January 1, 1996, may acquire a vested right to pension benefits after earning 5 vesting credits, employees such as Plaintiff who did not work after that date were required to amass 10 vesting credits in order to attain the same vested right.  A.R. 65, 131.

An employee accumulates pension credits on a yearly basis in accordance with the following criteria:

---

[1] A retired employee who is eligible for regular retirement pension benefits may receive monthly benefits at an amount which is the product of the number of pension credits he or she earned and the applicable pension multiplier. A.R. 70. An eligible retiree who earned at least one pension credit after January 1, 1997, and who retired no earlier that January 1, 1998, may receive monthly benefits at an amount which is the product of the total hours he or she worked and the applicable pension hours multiplier, if that amount is greater than the product of his or her pension credits and the applicable pension multiplier. A.R. 70-71.

2

(5:12CV01459)

| **Hours Worked in Covered Employment for which Defendant Received Employer Contributions at the Standard Rate** | **Pension Credit Earned** |
|---|---|
| 1,000 or more | 1 Pension Credit |
| 750 to 999.99 | 0.75 Pension Credit |
| 500 to 749.99 | 0.5 Pension Credit |
| 250 to 499.99 | 0.25 Pension Credit |
| Less than 250 | 0 Pension Credit |

A.R. 126. In general, the accumulation of vesting credits tracks that of pension credits. For example, an employee receives 0.25 vesting credits for every 0.25 pension credits earned. A.R. 129.

Plaintiff worked in covered employment for a contributing employer to the Pension Fund, Ruhlin Construction Company ("Ruhlin"), from 1968 to 1977. A.R. 10, 19; *see* ECF No. 29 at 3. In 1968, and from 1970 to 1977, Plaintiff earned 1 pension credit and 1 vesting credit in each of those years. A.R. 19; ECF No. 32 at 2. The crux of the controversy lies in the number of pension and vesting credits Plaintiff earned in the year 1969. Defendant claims that Plaintiff acquired only 0.5 pension and vesting credits that year, for a total of 9.5 pension and vesting credits–half a credit shy of the 10 vesting credits necessary for Plaintiff to receive a vested right to pension benefits. A.R. 19, 53; *see* ECF No. 32 at 3. Because Plaintiff's right to pension benefits did not vest, Defendant argues, he forfeited his pension credits in 1987 when he suffered a "break in service" within the meaning of the Pension Plan, that is, when he did not work in covered employment for a period of consecutive years longer than his 9.5 years of vesting credits. A.R. 19, 143.

For that reason, on February 28, 2007, the Board of Trustees rejected Plaintiff's application for pension benefits, which Plaintiff filed when he reached the age of 60. A.R. 2-4, 19, 31, 53. On

3

(5:12CV01459)

October 1, 2007, and September 5, 2008, Plaintiff's appeals of the decision were denied by the Reviewing Committee designated by the Board of Trustees. A.R. 31, 53, 89.

Plaintiff brought this lawsuit pursuant to § 502(a)(1)(B) of ERISA, which allows a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). Plaintiff contends that the plan administrator ignored evidence that he worked at least 1,000 hours in 1969, which gives him 10 pension and vesting credits and entitles him to pension benefits that cannot be forfeited. ECF No. 29 at 4.

The Court ordered Defendant to submit the entire administrative record with respect to the benefits decision as it pertained to Plaintiff. ECF No. 22 at 2. Plaintiff then filed a brief arguing the merits of his action based on the administrative record. ECF No. 29. Defendant filed a response, to which Plaintiff filed a reply. ECF Nos. 32, 35. This suit is ready to be adjudicated by the Court.

## II. Legal Standard

In an ERISA action challenging the denial of benefits, "a plan administrator's decision is reviewed 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health & Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir. 2000). "If the benefit plan does grant such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the 'arbitrary and capricious' standard of review." *Id.* Plaintiff concedes that the Pension Plan grants discretionary authority to

4

(5:12CV01459)

the Board of Trustees to make eligibility determinations, and that the Court should review the denial of benefits under an arbitrary and capricious standard. ECF No. 29 at 11; A.R. 89, 127, 129.

The arbitrary and capricious standard is a deferential standard that requires a court to uphold a claims decision "'so long as it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Frazier v. Life Ins. Co. of North America*, 725 F.3d 560, 567 (6th Cir. 2013) (*quoting Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561-62 (6th Cir. 2007)). A claims decision should not be disturbed "if it [was] the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bennet v. Kemper Nat'l Services, Inc.*, 514 F.3d 547, 552 (6th Cir. 2008) (internal quotations omitted). Evidence is substantial if a reasonable mind might accept it as adequate to support a conclusion. *Hurse v. Hartford Life & Accident Ins. Co.*, 77 Fed. Appx. 310, 318 (6th Cir. 2003). Although this standard is deferential, it is not a mere formality. *Glenn v. Metlife*, 461 F.3d 660, 666 (6th Cir. 2006). A reviewing court must still review the quality and quantity of the evidence on both sides of the issue. *Id.* The court's review is limited to the administrative record unless the evidence is offered in support of a procedural challenge to the administrator's decision. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J., concurring); *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).

When a conflict of interest requires that decisions be closely scrutinized, the standard is "tempered." *Cox v. Standard Ins. Co.*, 585 F.3d 295 (6th Cir. 2009). "When the same entity determines eligibility for benefits and also pays those benefits out of its own pocket, an inherent conflict of interest arises. In close cases, courts must consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits." *Id.*

5

(5:12CV01459)

### III. Discussion

A.

Before proceeding to the heart of the dispute–the amount of pension and vesting credits Plaintiff earned in 1969–Court makes several preliminary determinations.

First, the Court is unpersuaded by Plaintiff's contention that the arbitrary and capricious standard of review should be tempered. According to Plaintiff, "the Defendant here is entitled to less deference given the fact that there is an inherent conflict of interest because the Defendant is both the decision maker with respect to who receives benefits and also the payor of those benefits." ECF No. 29 at 11. This statement misses the mark. The function of deciding pension claims falls to the Board of Trustees, which is comprised of four representatives from different contributing employers and four representatives from different unions. A.R. 94. The unions do not pay for pension benefits and their representatives presumably have an interest in ensuring that benefits are properly paid to eligible pensioners. While pension benefits are funded by employer contributions, such benefits are disbursed from a common fund into which employers have *already* paid. Therefore, no conflict of interest arises that warrants a tempering of the arbitrary and capricious standard in the present case.

Second, the administrative record discloses two governing plan documents. The first document is the plan that was in effect on January 1, 1976. A.R. 117. The second document is a summary description of the plan that was in effect on March 28, 2005. A.R. 57. The two documents share many similarities; many provisions of the 1976 plan remain substantially the same in the 2005 plan. The plan that controls Plaintiff's benefits, however, and which the Court refers to as the "Pension Plan," is the 1976 plan. The 1976 plan was the plan in existence when Plaintiff claims he

(5:12CV01459)

received his 10th vesting credit in 1977, and, as a consequence, his right to vested pension benefits. See *Member Services Life Ins. Co. v. American Nat'l Bank & Trust Co.*, 130 F.3d 950, 957 (10th Cir. 1997) ("a *post hoc* amendment clearly cannot alter a plan provision in effect at the time performance under the plan became due"); *Frommert v. Conkright*, 433 F.3d 254, 264 (2d Cir. 2006) (later-adopted plan cannot be applied to reduce vested benefits); *compare Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003) ("that benefits have not vested suggests that the plan is malleable and the employer is at liberty to change the plan").

Third, the Court rejects, at the outset, Plaintiff's argument that he accrued 0.25 pension and vesting credits for 269.93 hours of work that he performed for another contributing employer, Turner Construction, in 1967. ECF No. 29 at 8. Article II(a) of the Pension Plan permits employees to acquire partial pension credits "for each calendar year subsequent to December, 31, 1967 . . . ." A.R. 126. In contrast to Article II(a), Article II(b) of the Pension Plan provides:

> For the period ending on December 31, 1967, an EMPLOYEE shall be credited with one year of PENSION CREDIT for each calendar year during any period of consecutive years ending on December 31, 1967, during each of which years the EMPLOYEE was employed in the INDUSTRY within the State of Ohio for at least 1,000 hours.

A.R. 126. Because the Pension Plan does not allow for the accumulation of partial credits prior to 1968, Defendant's decision not to credit Plaintiff for his work for Turner Construction in 1967 adhered to the terms of the Pension Plan and was not arbitrary and capricious.[2]

---

[2] Even the 2005 plan provides that the system for awarding partial pension credits applies to "hours . . . work[ed] in covered employment on or after December 31, 1967 . . . ." A.R. 64.

7

(5:12CV01459)

B.

Turning to the essence of the dispute, both parties claim that the administrative record supports their respective positions regarding the number of vesting and pension credits earned by Plaintiff in 1969. Defendant claims that payroll records for 1969 "demonstrate[] 505 hours worked by Plaintiff for which Employer Contributions were made to the Pension [F]und." ECF No. 32 at 16. This, argues Defendant, merits only 0.5 pension and vesting credits. ECF No. 32 at 16-17. In response, Plaintiff asserts that Defendant arrived at 505 hours in an "unknown" and "unexplained" fashion. ECF No. 29 at 2. Plaintiff argues that he in fact worked 1,290.69 hours in 1969–as determined by dividing his 1969 earnings at Ruhlin, $5,395.09, with his hourly wage in 1970, $4.18.[3] ECF No. 29 at 4. In addition, Plaintiff relies on the affidavit of Calvin Jett, who attested that (1) he (Jett) was a superintendent at Ruhlin; (2) he worked with Plaintiff during the period from 1968 to 1970; and (3) that in 1969 Plaintiff was employed at Ruhlin full-time, worked the entire year, and worked more than 1,000 hours.[4] ECF No. 29 at 3; A.R. 51.

Article II(a) of the Pension Plan provides that an employee's accrual of pension credits after December 31, 1967 (the date after which the partial credit system took effect) is based on "EMPLOYER CONTRIBUTIONS at the STANDARD RATE OF CONTRIBUTION" for the number of hours of covered employment that the employee worked in a calendar year. A.R. 126.

---

[3] In 1967, the lowest hourly laboring wage for the union in which Plaintiff belonged, Local 894, was $4.15. A.R. 47. Even using this lowest rate, Plaintiff's hours for 1969 surpasses 1,000 ($5,395.09/4.15=1,300).

[4] The Court previously rejected Defendant's attempt to strike Jett's affidavit from the record. The Court's rationale is explained in its April 30, 2013 order. ECF No. 30 at 2.

8

(5:12CV01459)

Article II(a) further provides: "Hours worked for which contributions are received at less than the STANDARD RATE OF CONTRIBUTION shall be pro-rated downward in proportion to the ratio of contributions received to STANDARD RATE OF CONTRIBUTION." A.R. 126. Therefore, Plaintiff's pension credits in 1969 are not determined solely by the quantity of hours worked. For Plaintiff to receive full credit for his hours, his employer, Ruhlin, must have contributed to the Pension Fund at the standard rate of contribution for those hours.

The administrative record contains paltry evidence supporting the Board of Trustees's conclusion that Ruhlin made contributions on Plaintiff's behalf for 505 hours of work in 1969. Defendant does not provide a single citation to a document that supports this figure. After scouring the record, the Court uncovered only one document that might explain the Board of Trustees's decision. That document is a spreadsheet printout, dated "09/12/06" that lists yearly entries for the fields "Total Hrs" and "Wrk Hrs" with respect to an unidentified individual.[3] A.R. 7. Numerical entries appear under those fields for the years 1968 to 1977 (after 1977, the entries display "0.00"). For the year 1969, the fields "Total Hrs" and "Wrk Hrs" each display the entry, "505.00." A.R. 7.

The spreadsheet's origin is unknown. It appears as if it could have been prepared with any word processing software at any time. Because Defendant does not cite or discuss this document, the Court is provided no information as to how this document was prepared. The spreadsheet does not reveal the source of its data, how the data was retrieved, or how the data was compiled. Nothing in the administrative record corroborates the "505.00" entry. Although the administrative record

---

[3] The other fields displayed are "BenCdts," TotBenCdt," "VestCdt," and "TotVstCdt." A.R. 7.

9

(5:12CV01459)

contains dated, handwritten logs recording the hours Plaintiff worked for Ruhlin, those logs exist only for the years 1975, 1976, and 1977.  A.R. 12-13.  The spreadsheet does not reveal indicia of reliability or trustworthiness or the contrary.

In contrast, Plaintiff points to certified records from the Social Security Administration showing that he earned $5,395.09 in 1969 while employed at Ruhlin.  A.R. 22.  Without question, these records were presented to and reviewed by the Board of Trustees.  ECF Nos. 26; 26-1; *see* A.R. 19.  As Plaintiff concedes, the record does not disclose his hourly wage for that year. ECF No. 29 at 4. Nonetheless, Defendant does not dispute that Plaintiff's hourly wage for the following year, 1970, was $4.18, which is a reasonable estimate for the prior year's hourly wage (something Defendant also does not dispute).  Dividing $5,395.09 with $4.18 per hour yields 1,290.69 hours, a figure that is consistent with the sworn statements of Jett, the Ruhlin superintendent, who attested that Plaintiff worked for Ruhlin "full time" for the entirety of 1969, and accumulated a total of more than 1,000 hours.  A.R. 51.  Importantly, nothing in the administrative record shows, and Defendant does not argue, that Ruhlin undercontributed to the Pension Fund on Plaintiff's behalf in 1969 or in any other year, which undercontribution would require a downward adjustment to the number of hours credited to Plaintiff.

Defendant presents several arguments to persuade the Court that the Board of Trustees's determination was not arbitrary and capricious.  None of these arguments is compelling.

First, Defendant directs the Court to a letter dated March 31, 1970, from Defendant's administrator to Ruhlin regarding an audit performed of Ruhlin's contributions to the Pension Fund from April, 1968, to February, 1970.  ECF No. 32 at 16.  The letter states that "[t]he results of this

10

(5:12CV01459)

examination indicate that reports and payments of contributions for the period audited are substantially correct; thus, no adjustments are necessary at this time." A.R. 16. The audit report, dated March 13, 1970, contains comments by the auditor stating that he or she "[c]ompare[d] hours reported with individual payroll records and allied reports. No discrepancies noted." A.R. 17. These documents do not justify the Board of Trustees's decision. The audit merely confirmed that Ruhlin's contributions matched the amount of employment hours it reported, which, in turn, matched the company's individual payroll records. They did not show that Ruhlin's contributions to the Pension Fund entitled Plaintiff to be credited with only 505 hours of work. If anything, the audit supports Plaintiff's contention that he was undercredited in 1969. Because the audit determined that "no adjustments [were] necessary" to the hours reported by Ruhlin, Plaintiff's hours of employment could not have been "pro-rated downward" pursuant to Article II(a) of the Pension Plan.

Second, Defendant claims that a year within the meaning of the Pension Plan runs from November 1 to October 31. ECF No. 32 at 21. Therefore, argues Defendant, Plaintiff's 1969 hours must exclude the hours he worked in November, 1969 (144.50 hours), and December, 1969 (127 hours). ECF No. 32 at 21. This argument falters for two reasons. First, Defendant provides no evidence that the pension year runs from November 1 to October 31. To the contrary, Article II(a) of the Pension Plan clearly states that, after December 31, 1967, "An EMPLOYEE shall be credited with the following PENSION CREDIT for each *calendar year* . . . ." A.R. 126 (emphasis added). The most common definition of the word "calendar year"–which is not specially defined in the Pension Plan–is "a period of a year beginning and ending with the dates which are conventionally accepted as marking the beginning and end of a numbered year (as Jan. 1 and Dec. 31 in the

11

(5:12CV01459)

Gregorian calendar)...." Webster's Third New International Dictionary (1993). Furthermore, even were Plaintiff's November and December, 1969, hours excluded for the purpose of calculating his hours worked, the total number for 1969 would still exceed 1,000 hours.[4]

Third, Defendant raises the possibility that Plaintiff worked, in part, in *noncovered* employment for Ruhlin in 1969, that is, employment for which Ruhlin was not required to make contributions to the Pension Fund on Plaintiff's behalf. ECF No. 32 at 3, 18-21. Nothing, argues Defendant, requires Plaintiff to be credited for such noncovered hours. ECF No. 32 at 18-21.

Defendant is incorrect. Department of Labor regulations provide, with respect to determining vesting when multi-employer plans are involved, that "[i]f an employee moves from contiguous noncovered to covered service, or from covered service to contiguous noncovered service, with the same employer, the plan is required to credit all hours of service with such employer for purposes of eligibility to participate and vesting." 29 C.F.R. § 2530.210(c)(1). The regulations further provide that "[f]or the purposes of this section noncovered service shall be deemed 'contiguous' if (1) the noncovered service precedes or follows covered service and (2) no quit, discharge, or retirement occurs between such covered service and noncovered service." 29 C.F.R. § 2530.210(c)(3)(iv). Nothing shows that Plaintiff quit, was discharged from, or retired from Ruhlin in 1969. Contrarily, personnel records show that Plaintiff worked at Ruhlin from 1968 through

---

[4] 1,290.69 (total 1969 hours) - 144.50 (November, 1969, hours) - 127 (December, 1969, hours) = 1,019.19 hours.

12

(5:12CV01459)

1977.[5] A.R. 10, 19. To the extent that Plaintiff worked in noncovered employment in 1969, that period of employment must be credited to Plaintiff along with his covered hours of employment.

Defendant claims that ERISA's vesting rules do not apply to Plaintiff because they were enacted after 1969. ECF No. 32 at 18-20. Defendant points out that ERISA's vesting rules, *see* 29 U.S.C. § 1053(a), "in the case of a plan in existence on January 1, 1974 . . . shall apply in the case of plan years beginning after December 31, 1975." 29 U.S.C. § 1061(b)(2). Furthermore, the Department of Labor's regulations with respect to noncovered contiguous employment was not enacted until December 28, 1976. 41 Fed. Reg. 56462.

The Court finds the legislative history with respect to ERISA's vesting rules instructive. The House Conference Report provides, with respect to "[b]enefits accrued in the past," that "[g]enerally, the vesting rules of the conference substitute are to apply to all accrued benefits, *including those which accrued before the effective date of the provisions . . . .*" H.R. Conf. Rep. 93-1280, 93d Cong., 2d Sess. 1974, 1974 U.S. Code Cong. & Admin. News 5038, 5056 (emphasis added). Hence, the Eighth Circuit held that ERISA's vesting rules could apply to pre-ERISA events. Specifically, it held that a plan administrator could not deny benefits to an employee on the basis of the plan's "bad boy" clause, which required the employee to forfeit vested pension benefits for dishonest conduct that occurred prior to ERISA, because at the time ERISA's vesting rules came into effect–and invalidated

---

[5] Defendant maintains that Plaintiff did not engage in contiguous noncovered service because he reported no hours in February, 1969; he worked for another company, Accoa, in March, 1969; and he worked for both Ruhlin and Acoa in April, 1969. ECF No. 32 at 20. Defendant also points out that Plaintiff did not submit an affidavit asserting that he was not laid off from Ruhlin. ECF No. 32 at 21. None of the foregoing succeeds in showing that Plaintiff quit, was discharged, or retired from Ruhlin, particularly in light of personnel records demonstrating that Plaintiff worked at Ruhlin from 1968 through 1977. A.R. 10, 19.

(5:12CV01459)

"bad boy" clauses–the employee was still employed and not yet filed his application for pension benefits. *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 311 (8th Cir. 1979). The Seventh Circuit held, in contrast, that ERISA's vesting rules could not invalidate an administrator's use of a "bad boy" clause to deny benefits because the employee in question was no longer employed at the time ERISA's vesting rules became effective. *Fremont v. McGraw-Edison Co.*, 606 F.2d 752, 755 (7th Cir. 1979) ("[w]e agree with the district court that § 203 [of ERISA] only protects against forfeiture the benefits of those who are in an employee status on January 1, 1976, or thereafter"). The principle outlined by these cases leads the Court to conclude that ERISA's vesting rules, and its concomitant regulations, controlled the Board of Trustees's determination of Plaintiff's 1969 credits. After all, Plaintiff was still employed at Ruhlin in 1977 *after* ERISA's vesting rules came into effect and the noncovered contiguous service regulation was enacted.

Based on the above, the Court rejects Defendant's contention that application of the noncovered contiguous service regulation to 1969 would be a prohibited, retroactive application of ERISA. The cases cited by Defendant all involve employees whose employment ended *prior* to ERISA's effective date, and thus are inapposite. *See Ponce v. Construction Laborers Pension Trust for Southern California*, 628 F.2d 537, 541 (9th Cir. 1980) (although ERISA's eligibility standards are not retroactive, ERISA protects pension rights of workers "who were working at the beginning of calendar year 1976, the effective date of the Act"); *Fremont*, 606 F.2d at 755 (same principle).

Finally, Defendant argues that Plaintiff's lawsuit is procedurally barred because he failed exhaust his administrative remedies by timely appealing the Board of Trustees's determination to the Reviewing Committee. ECF No. 32 at 8-9. Although ERISA is silent as to whether exhaustion

14

(5:12CV01459)

of administrative remedies is a prerequisite to bringing a civil action, the Sixth Circuit has held that "'[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.'" *Coomer v. Bethesda Hospital, Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (*quoting Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).  ERISA's administrative exhaustion requirement for civil actions is, however, applied as a matter of judicial discretion.  *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998).  A court is obliged to exercise its discretion to excuse nonexhaustion when "resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Id*.  The standard of judging the futility of resorting to the administrative remedies provided by a plan is "whether a clear and positive indication of futility can be made." *Id.*

As required by the Pension Plan, Plaintiff filed two appeals of the Board of Trustees's eligibility determination to the Reviewing Committee, both of which were denied.  A.R. 31, 53, 89, 151-53.  There is no dispute that both of Plaintiff's appeals were untimely.  Notwithstanding Plaintiff's failure to timely file his administrative remedies, the Court finds a clear and positive indication that Plaintiff's pursuit of his administrative remedies was futile.

As discussed, the Board of Trustees's conclusion that Plaintiff should be credited with only 505 hours in 1969 was supported entirely by an uncorroborated spreadsheet that did not reveal the source of the data displayed, how the data was retrieved, how the data was compiled, and which lacked any indication of reliability and trustworthiness.  In comparison, certified documents from the Social Security Administration established Plaintiff's 1969 earnings for Ruhlin and provided substantial evidence that Plaintiff worked more than 1,000 hours that year.  Nothing indicated that

15

(5:12CV01459)

a downward adjustment to Plaintiff's hours was required; actually, the audit performed of Ruhlin's contributions showed that no adjustments were necessary.  Plaintiff's evidence was further bolstered by Jett's sworn affidavit, which attested that Plaintiff was a full-time employee for Ruhlin for all of 1969 and that he worked more than 1,000 hours.  Notwithstanding the disparity in terms of the quality and quantity of the evidence on both sides of the dispute, the Reviewing Committee still denied Plaintiff's appeals.  In so doing, the Reviewing Committee ignored Plaintiff's Social Security records and Jett's affidavit.  In fact, the Reviewing Committee's first denial provided little explanation beyond stating that Plaintiff "[did] not have the required ten pension credits . . . ." A.R. 31.  In the second denial, the Reviewing Committee addressed Plaintiff's 1969 work records by stating only that "the Fund Office had audited the payroll records of the company in question and found no discrepancies in their report."  A.R. 53.  That an audit had been performed might be meaningful if the payroll records showing Plaintiff's 1969 work hours were part of the administrative record.  They were not.  All that was included was an unsupported and unexplained spreadsheet upon which the Board of Trustees and Reviewing Committee exclusively and obstinately relied.

The Court finds a clear and positive indication that the Reviewing Committee would have rejected Plaintiff's appeals no matter how compelling his evidence.  Perhaps a more significant indication, however, is Defendant's behavior in this lawsuit.  Before the parties submitted their merits briefs, the Court ordered Defendant to "file the *entire* administrative record . . . ." ECF No. 22 at 2 (emphasis added).  Despite this unequivocal command, Defendant omitted a crucial document supporting Plaintiff's case: the Social Security Administration record showing Plaintiff's 1969 earnings at Ruhlin.  Plaintiff was forced to move to supplement this document into the record.

16

(5:12CV01459)

Defendant did not oppose the motion. ECF Nos. 26, 28, 30. Defendant failed to provide explanation for the omission. ECF No. 28. And, Defendant remained silent even after Plaintiff accused Defendant of intentionally "attempt[ing] to exclude from the Administrative Record in this appeal evidence of the 1969 dollars earned and hours worked by Mr. Evans for the covered employer, Ruhlin Construction." ECF No. 29 at 11. To date, the Court remains under-informed about what it would like to believe was the result of an inadvertent oversight. Nevertheless, the omission coupled with Defendant's dubious rejections of Plaintiff's attempts to obtain his pension benefits encourages the indication that Plaintiff's efforts to resolve this matter administratively were futile.

Because, as the Court concludes, there is sufficient evidence to show that Plaintiff's appeals to the Reviewing Committee was a futile exercise, the Court excuses Plaintiff's failure to properly exhaust his administrative remedies. In addition, the Court concludes that the decision of the Board of Trustees to deny pension benefits to Plaintiff was arbitrary and capricious, and in violation of the terms of the Pension Plan. Its decision was not based on substantial evidence because no reasonable person would accept it as adequate under the circumstances. Rather, it appears that the plan administrator "'cherry-picked' [the] file in hopes of obtaining a favorable" outcome. *Spangler v. Lockheed Martin Energy Systems, Inc.*, 313 F.3d 356, 362 (6th Cir. 2002).

## IV. Conclusion

Based on the above, the Court finds that Plaintiff has acquired ten (10) pension credits and ten (10) vesting credits in accordance with the Pension Plan. Therefore, the Court hereby orders that: (1) Plaintiff be given access to his vested pension benefits forthwith, retroactive to the date of his pension application, August 26, 2006, with interest at the appropriate statutory rate; (2) Defendant

(5:12CV01459)

immediately provide Plaintiff with the appropriate benefit election forms to be completed by Plaintiff; and (3) Defendant pay Plaintiff reasonable attorney's fees incurred in bringing this action.

    IT IS SO ORDERED.

| | |
|---|---|
| March 25, 2014 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |